

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-1997

# Gen Ins Co of Amer v. E Consol Util Inc

Precedential or Non-Precedential:

Docket
96-1882

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Gen Ins Co of Amer v. E Consol Util Inc" (1997). *1997 Decisions.* Paper 226.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/226

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 22, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1882

GENERAL INSURANCE COMPANY OF AMERICA

v.

EASTERN CONSOLIDATED UTILITIES, INC.; MID-
ATLANTIC PIPELINE, INC.; EASTERN EXCAVATING, INC.;
JOHN L. DADDONA; JUDY DADDONA; DONALD A.
DADDONA; EVA DADDONA; FRANK P. DADDONA;
KATHERINE M. DADDONA

> John L. Daddona, Judy L. Daddona
> and David Gubitosi,
>
> Appellants.

*Pursuant to Rule 12(a), FRAP

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 94-cv-04388)

ARGUED JUNE 16, 1997

BEFORE: STAPLETON, LEWIS and ALDISERT,
Circuit Judges.

(Filed September 22, 1997)

John P. Karoly, Jr. (ARGUED)
Law Offices of John Karoly
1555 North 18th Street
Allentown, PA 18104

 Attorney for Appellants

Henry S. Perkin
Perkin & Feldman
532 Walnut Street
P.O. Box 686
Allentown, PA 18105-0686

Benjamin D. Lentz (ARGUED)

            Hart & Hume
            10 East 40th Street
            New York, NY 10016

             Attorneys for Appellee

OPINION OF THE COURT

LEWIS, Circuit Judge.

In this case, a defendant and a nonparty deponent were
held in contempt of court, pursuant to Federal Rule of Civil
Procedure 37(b), for failing to appear at their respective
depositions. As one of the sanctions imposed, the district
court took as established certain facts relating to both the
defendant and nonparty deponent. The issue we confront
on appeal is whether the district court abused its discretion
in holding the defendant and the nonparty deponent in
contempt and in fashioning sanctions with respect to its
contempt order.

We will hold that the district court abused its discretion
in holding the defendant in contempt for failure to appear
because the plaintiff failed to set a time and place for his
deposition, as required by the district court's order. We
further find that the district court did not err in holding the
nonparty deponent in contempt, inasmuch as he failed to
attend a scheduled deposition. However, we conclude that

                              2


the district court abused its discretion in sanctioning the
nonparty deponent by binding him to the established facts.
As a result, we will remand to the district court so it may
reconsider appropriate sanctions consistent with this
opinion.

I.

The Underlying Action

In 1994, Appellee General Insurance Company of
America sued John L. Daddona ("Daddona"), Eastern
Consolidated Utilities, Inc., Mid-Atlantic Pipeline, Inc.,
Eastern Excavating, Inc., Judy Daddona, Frank P. Daddona
and Katherine M. Daddona. Daddona and the other
defendants had executed an indemnity agreement and
other agreements in which they essentially promised to
reimburse General for potential losses arising from its
issuance of certain bonds connected to several construction
projects. The contractor, and the principal on the bonds,
was defendant Eastern Consolidated Utilities, Inc., a

company affiliated with Daddona. General had lost several million dollars as a result of issuing those bonds.

Daddona employed extraordinary delaying tactics during pre-judgment discovery. As a result, the court, by Order filed May 10, 1995, granted a motion compelling Daddona to submit to a deposition and produce documents. After the deposition, General moved for summary judgment on all of its claims in the amount of $3,993,566.96 against Daddona and certain of the other defendants (Eastern Consolidated Utilities, Inc., Mid-Atlantic Pipeline, Inc., Eastern Excavating, Inc. and Judy Daddona). Final judgment was entered on August 30, 1995, against these defendants. Prior to entry of judgment, General settled with the remaining defendants, Frank P. Daddona and Katherine M. Daddona, and the case was dismissed as to them.

General sought postjudgment discovery because the judgment remained unsatisfied. Daddona has neither appealed the judgment nor sought a stay of enforcement.

3

Enforcement of the Judgment

On November 21, 1995, in aid of its enforcement of the judgment, General took the deposition of Charles Hair, an attorney Daddona retained to incorporate various entities. Daddona was given notice of the deposition, but did not attend. Hair testified that he incorporated Five-Star, Ltd.; Par-3, Ltd.; D.G. Holding, Inc.; The Master at Shepherd Hills, Inc.; and The Golf Course at Shepherd Hills, Inc. He also testified that Five-Star was owned in three equal shares by Gubitosi, the Culnen Family Trust and the Dadd Partnership. The Dadd Partnership was owned in equal parts by Daddona and his two brothers. Five-Star owned 100% of the shares in Par-3, Ltd. Five-Star also owned 85% of the shares in D.G. Holding, Inc.; The Dadd Partnership owned 10% and Gubitosi 5% of the remainder. D.G. Holding, in turn, owned The Masters at Shepherd Hills, Inc. and The Golf Course at Shepherd Hills, Inc. Together, Par-3, Ltd. and D.G. Holding, Inc. operated a golf course and country club known as Shepherd Hills. Hair also testified that he had owned 5% of D.G. Holding which he later transferred to Gubitosi. Hair's testimony was limited to the events surrounding the incorporation of these entities; he did not purport to describe their current ownership structure.

General also noticed Daddona's deposition. The notice demanded certain documents and designated November 21, 1995, as the date for the deposition. Daddona did not

provide the requested documents and did not attend the
deposition. General then moved for an order compelling
Daddona to comply with the notice. On January 19, 1996,
the district court, apparently pursuant to Federal Rule of
Civil Procedure 37(a)(2) and (4), granted General's motion
and ordered Daddona to pay a sanction of $100 by
February 5, 1996 and to attend his deposition "at a time
and place designated by Plaintiff within thirty (30) days
. . . ." General Ins. Co. of Am. v. Eastern Consol. Utils., Inc.
et al., slip op. at 1, dated January 19, 1996 (No. 94-4388)
(A. at 1). General never sent a letter setting a date for a
deposition and Daddona never attended one.

Appellant David M. Gubitosi, Daddona's business
partner, was not a defendant in the underlying action and

4

became involved only after judgment was entered. Seeking
to acquire information concerning Daddona's business
interests, General served Gubitosi with a subpoena on
December 29, 1995. The subpoena called for Gubitosi's
deposition and document production on January 10, 1996.

On January 4, 1996, General's attorneys wrote to
Gubitosi's attorney, John P. Karoly, Jr. to confirm this
plan. Because of bad weather, however, it was mutually
agreed that the deposition would be briefly delayed. Karoly
failed to respond to telephone calls regarding a new date.
General then wrote a letter, dated February 2, 1996, to
suggest new dates. Gubitosi failed to respond. As a result,
upon General's motion pursuant to Fed.R.Civ.P. 45(e), the
district court found Gubitosi to be in contempt and ordered
him to produce documents and attend his deposition "at a
time and place designated by plaintiff, within 30 days of the
date of this Order."1 General Ins. Co. of Am. v. Eastern
Consol. Utils., Inc. et al., slip op. at 2, dated May 15, 1996
(No. 94-4388) (emphasis in original) (A. at 4).

On May 22, 1996, General wrote to John P. Karoly, Jr.,
Gubitosi's attorney, designating June 3, 1996, as the date
for his deposition. Gubitosi then fired Karoly and hired a
new attorney, James L. Heidecker. (He later replaced
Heidecker with Karoly). Heidecker requested and received a
brief adjournment. On June 17, 1996, General sent a letter
to Heidecker regarding the contempt order and the
deposition. Neither Heidecker nor Gubitosi responded.

General wrote to Heidecker again on June 25, 1996, and
designated July 31, 1996, as the new date for the
deposition. Gubitosi requested yet another adjournment,
and General wrote again on July 23, 1996, designating July

24 as the date for document production and August 15 as the date for the deposition. But Gubitosi did not produce any documents by the 24th. By letter dated July 29, 1996, General informed Gubitosi that if the documents were not produced by July 31, 1996, the deposition would not go

_____

1. Rule 45(e) (1996) provides in relevant part:"Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued."

forward and another motion for sanctions would be presented to the court. On August 15, Gubitosi arrived at the offices of General's lawyer, claiming that he was there for the deposition; however, General had canceled the deposition, and General's attorneys were not present because it had not received the requested documents by July 31, 1996. Thus, once again, the deposition did not go forward.

On August 16, 1996, General, pursuant to Federal Rule of Civil Procedure 37(b), requested the district court to issue an order declaring Daddona to be in contempt for failure to obey the Order dated January 19, 1996, and directing him to attend his deposition and produce documents by February 19, 1996; declaring Gubitosi to be in contempt for failure to obey the Order dated May 15, 1996, and directing him to attend his deposition and to produce documents by June 15, 1996; requiring Daddona and Gubitosi to pay $500 each to General for its expenses and attorney's fees; and declaring the following facts (which were drawn from Hair's deposition) to be established as against both Daddona and Gubitosi:

>   (i) Five-Star Holding, Limited (a/k/a Five-Star Ltd.), D.G. Holding, Inc. (a/k/a D.G. Holding, Inc.), Par-3, Ltd., The Masters at Shepherd Hills, Inc. and The Golf Course at Shepherd Hills, Inc. are all Pennsylvania corporations;
>
>   (ii) Gubitosi, the Dadd Partnership and [Culnen] Family Trust each own one third of the shares of stock in Five-Star Limited;
>
>   (iii) Five-Star Limited owns 85% of the shares of stock in D.G. Holding, Inc., the Dadd Partnership owns 10% and Gubitosi owns 5%;
>
>   (iv) Five-Star Limited owns 100% of the shares of

stock in Par-3, Ltd.;

(v) D.G. Holding, Inc., owns 100% of the shares of stock in The Masters at Shepherd Hills, Inc. and the Golf Course at Shepherd Hills, Inc.;

(vi) The Dadd Partnership is a Pennsylvania partnership; and

6

(vii) Judgment debtor Daddona owns, either individually or jointly with judgment debtor Judy Daddona, a one third interest in the Dadd Partnership, Donald A. Daddona owns, either individually or jointly with Eva Daddona, a one third interest and Frank P. Daddona owns, either individually or jointly with Katherine Daddona, a one third interest.

S.A. at 27-28.

General's motion was granted in its entirety by an Order filed August 28, 1996.

II.

The district court had jurisdiction pursuant to 28 U.S.C. S 1331. A postjudgment order of contempt as to a party is final, so long as the district court has completely disposed of the matter. Sportmart, Inc. v. Wolverine World Wide, Inc., 601 F.2d 313 (7th Cir. 1979); see Cromaglass Corp. v. Ferm, 500 F.2d 601 (3d Cir. 1974) (order establishing facts pursuant to Rule 37(b)(2) as to some claims is not final order if it does not adjudicate all claims in complaint); see also Ohntrup v. Firearms Center, Inc., 802 F.2d 676 (3d Cir. 1986) (quoting Sportmart approvingly). Here, the district court granted General's motion in its entirety, and thereby disposed of all of General's postjudgment discovery requests. Thus, the order is final as to Daddona. An order for contempt or expenses against a nonparty, such as Gubitosi, is immediately appealable. United States Catholic Conf. v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988) ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned."); United States v. Bertoli, 994 F.2d 1002, 1012 (3d Cir. 1993). Thus, we have jurisdiction to hear this final order as to both Daddona and Gubitosi pursuant to 28 U.S.C. S 1291.

III.

Daddona and Gubitosi argue that the district court abused its discretion in holding them in contempt and in

fashioning its sanctions. Specifically, the district court held, pursuant to Rule 37(b) of the Federal Rules of Civil

Procedure ("Failure to Make Disclosure or Cooperate in Discovery: Sanctions"), that (1) Daddona was "in contempt of Court for failure to obey this Court's Order dated January 19, 1996, directing him to pay a sanction of $100, attend his deposition and produce documents by February 19, 1996;" and (2) Gubitosi was "in contempt of Court for failure to obey this Court's Order dated May 15, 1996, directing him to attend his deposition and to produce documents by June 15, 1996." Order, filed August 28, 1996, at 1. Daddona and Gubitosi argue that because they did not receive proper notice of their depositions, the court's finding of contempt and imposition of sanctions were improper.2

We review the granting of a motion for sanctions for failing to comply with a Rule 37 discovery order for abuse of discretion. Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir. 1982); see Petrucelli v. Bohringer and Ratzinger, GMBH, 46 F.3d 1298, 1310 (3d Cir. 1995) ("We apply the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery.").

Rule 37(b) ("Failure to Comply With Order") provides in relevant part:

> (1) Sanctions by Court in District Where Deposition is Taken. If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the district in which the deposition is being taken, the failure may be considered a contempt of that court.
>
> (2) Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order

_____

2. The Appellants also argue that the Order violates their right to "due process" (presumably that which is guaranteed by the Fifth Amendment). Appellants' Br. at 18. Because of the result we reach, we need not decide that issue as to Daddona, and because we find that Gubitosi had proper notice, his due process claim is without merit.

made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; . . .

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination; . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b) (1996).

The Appellants argue that "Daddona received no notice at all and Appellee General admits that there was no deposition even scheduled." Appellants' Br. at 13. It is undisputed, both in the briefs and at oral argument, that General never scheduled a deposition after the court issued its January 19, 1996 Order, and our review of the record leads us to the same conclusion. Thus, we hold that Daddona did not violate the express terms of that Order because General never set a time and place for a deposition. While it is clear from the record that Daddona has engaged in extraordinary delaying tactics, he did not violate the terms of that particular Order.

Appellants also argue that Gubitosi "had previously appeared for a deposition that had been unilaterally canceled without notice." Id. at 14. Here, the record does not support the Appellants' position. General wrote to Gubitosi's attorney on July 23, 1996, designating July 24

9

as the date of document production and August 15 as the

date of the deposition. Gubitosi did not produce any documents by July 24. By letter dated July 29, 1996, General informed Gubitosi that if the documents were not produced by July 31, 1996, the deposition would not go forward and another motion for sanctions would be presented to the court. On August 15, Gubitosi arrived at the offices of General's lawyer and stated that he was there for the deposition. Of course, by then General had canceled the deposition because it had not received the requested documents by July 31, 1996. Thus, the deposition did not go forward.

The July 29 letter provided Gubitosi notice that the deposition would be canceled if he failed to comply with the document production request. Moreover, the Order indicated that document production was to occur "at a time and place designated by" General. A. at 4 (emphasis in original). Gubitosi, therefore, violated the express terms of the May 15, 1996 Order.

Pursuant to Rule 37(b), the district court again declared Gubitosi in contempt in its August 28 Order. The court held that the Established Facts were binding on him (and Daddona) and ordered him to pay General's expenses and Attorney's fees.[3]

The district court did not specify whether it was acting pursuant to 37(b)(1) or (2). On its face, however, Rule 37(b)(2) applies only to parties, and we have found no case that has applied Rule 37(b)(2) to a nonparty.[4] We conclude

_____

3. The Appellants argue that the district court only had authority to issue an order punishing a party or nonparty for failing to attend a deposition pursuant to Rule 37(d). They are mistaken.

Gubitosi could be sanctioned pursuant to Rule 37(b)(1), which grants a district court the authority to punish a nonparty for failing to follow the court's directions. See Miller v. Transamerican Press, Inc., 709 F.2d 524, 531 (9th Cir. 1983) (noting that Rule 37(b)(1) sanctions may be available against nonparty deponent who fails to appear at deposition). Moreover, on its face, Rule 37(d) applies only to parties.

If Daddona had violated the January 19 Order, the court had the authority to sanction him under both Rule 37(b)(2) and Rule 37(d).

4. Rule 37(b)(2) does allow limited sanctions to be imposed upon a party's attorney.

10


that Rule 37(b)(1) provides the appropriate means to

sanction a nonparty. See Miller v. Transamerican Press, Inc., 709 F.2d 524, 531 (9th Cir. 1983) (noting that Rule 37(b)(1) sanctions may be available against nonparty deponent who fails to appear at deposition); see also 7 Moore's Federal Practice S 37.40 (3d Ed. 1997) ("[O]nly Rule 37(b)(1), governing a deponent's failure to be sworn or to answer a question after being directed to do so by the court, applies to nonparties. Rule 37(b)(2), governing all other failures to obey discovery orders, does not apply to nonparties."); 9 Moore's Federal Practice S 45.04[7] (3d Ed. 1997) ("Rule 37(b) sanctions are in their nature usually applicable to parties.").

The only sanction available under Rule 37(b)(1) is to hold a deponent in contempt of court. The record indicates that Gubitosi engaged in extraordinary dilatory tactics regarding his deposition and failed to comply with the clear requirements of the May 15 Order. Thus, we conclude that the district court did not abuse its discretion infinding that Gubitosi was in contempt of court. See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468 (9th Cir. 1992) (upholding finding of contempt pursuant to Rule 37 where party failed to comply with court's order to allow discovery).

We also find that the court did not abuse its discretion when it required Gubitosi to pay $500 to General for its expenses and attorney's fees, caused by his failure to comply with the May 15, 1996 Order. See Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994) (requiring party found to be in contempt for violating injunction to pay opposing party's attorney's fees).

Nonetheless, we find that the district court abused its discretion when it purported to bind Gubitosi to the Established Facts. As the Supreme Court explained in Insurance Corp. v. Compagnie Des Bauxites, 456 U.S. 694, 705 (1982), Rule 37(b)(2) "embodies the standard[s] established in Hammond Packing Co. v. Arkansas, 212 U.S. 322 (1909), for the due process limits on" rules providing for discovery sanctions. Those "two standards -- one general and one specific -- . . . limit a district court's discretion. First, any sanction must be `just'; second, the sanction must be specifically related to the particular

11

`claim' which was at issue in the order to provide discovery." 456 U.S. at 707. Thus, a court, under Rule 37(b)(2)A, cannot direct that designated facts be taken as true when those facts are unrelated to the claim or defense with respect to which the discovery is being sought. Rule 37(b)(2)A; Wright & Miller, 8A Federal Practice & Procedure,

S 2283.

As we have noted, Rule 37(b)(2) on its face applies only to sanctions against parties. Rules 37(b)(1) and 45(e), which allow a court to treat the failure of a non-party under subpoena to provide discovery as a contempt, do not provide for a sanction comparable to the one authorized by Rule 37(b)(2)A and, in light of Hammond Packing, we believe that omission was advertent. A non-party, by definition, is not a participant in the litigation and, when a non-party refuses to provide discovery, no claim has been asserted by or against it. Accordingly, we believe that neither Rule 37(b)(1) nor Rule 45(e) was intended to authorize an order that would effectively preclude a non-party from asserting in the future a claim that has not yet been made.

The district court's order in this case states only that Gubitosi will be bound by certain facts. It does not, in conformity with Rule 37(b)(2)(A), contain the limitation "for the purposes of the action." Even if we assume, however, that the district court's order was intended to bind Gubitosi only in the course of further proceedings to collect the judgment against Dadonna in this action, we would nevertheless conclude that the order was not authorized by Rule 37(b)(1) or Rule 45(e). The only effect that we can perceive as possibly intended by the order in this context would be preclusion of Gubitosi from asserting any claim of ownership of a present interest in property levied upon that would be inconsistent with the stipulated facts. Since such a claim would not have been the subject of the pending litigation or the discovery sought, we cannot uphold the district court's sanction order in its current form.

IV.

For the reasons discussed above, we will reverse the order of the district court to the extent it holds plaintiff

12

Daddona in contempt. As to the nonparty deponent, Gubitosi, we will affirm the order of the district court holding him in contempt, but remand so that the court may fashion appropriate sanctions consistent with this opinion.5

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

5. On remand, the district court should ensure that it documents its reasons for finding Gubitosi in contempt, the type of contempt applicable (civil or criminal) and its rationale for the particular sanctions that it ultimately imposes. See generally Harris v. City of Philadelphia, 47 F.3d 1311 (3d Cir. 1995).

13